## Illinois Central R. R. Co. v. John Sporleder.

1. VERDICTS—*Of Two Juries, When Conclusive.*—Where there is nothing in a case but questions of fact, and the evidence in regard to the controlling questions is conflicting, the jury are the better judges of the credibility and reasonableness of the testimony of the witnesses, and after the verdict of two juries the same way, the Appellate Court does not feel justified in saying the plaintiff had no case.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

On the 24th day of June, 1899, a collision between a passenger train and a freight train occurred on appellant's railroad, in or near the city of Belleville, by which a strip of the road was torn up, the rails twisted, the trains thrown from the track, and much damage done to the railroad in consequence of the collision. At that time and for about two years and a half prior thereto, appellee was a section hand in the employ of the railroad company, and with a large number of other section men, was called upon to repair the road, so that trains could be run over it. The foreman of the section crew with which appellee worked, was one Gamble, who directed appellant to pull the spikes that held the twisted rails to the ties, so that the rails could be removed. The usual way of pulling the spikes seems to have been to use a claw-bar to lift them from the ties, and where the spikes were so imbedded in the hard ties that they could not be drawn by the leverage of the claw-bar, the usual way to remove them was to use an adz and remove the hard wood around the necks of the spikes so that the claw-bar could take hold of the spikes and in that way remove them. While appellee was engaged in pulling the spikes, he came to a hard tie in which a spike was so deeply imbedded that the claw-bar would not take hold of it, when Gamble ordered one Trinkle, a section hand, to get an iron maul and assist in removing the spike,

by striking the heel of the claw-bar so as to get the claw of the bar to take hold of the neck of the spike, and thus remove it from the tie.

Appellee claims that he was unacquainted with that method of pulling spikes, and did not know it was dangerous and unsafe to pull them in that way; but that fact was known to appellant, or should have been known to it, as it was not good railroading. While appellee was engaged in the effort to remove the spike, Trinkle struck the heel of the claw-bar with the iron maul, at the command of Gamble, as claimed by appellee, when a small piece of the spike flew and struck appellee in his eye, destroying the sight of it, and causing him much pain and loss of time, besides the possibility of losing the sight of both eyes.

Appellee sued appellant in an action on the case to recover damages for the injuries he had sustained, in consequence of the negligence or recklessness of appellant's foreman in directing Frinkle to strike the heel of the claw-bar, which caused the injury to appellee.

A trial by jury resulted in a verdict and judgment in favor of appellee for $3,000, which on an appeal to this court was reversed, because of an error of the Circuit Court in refusing to give to the jury a proper instruction requested to be given by appellant. See 90 Ill. App. 590.

After the case was remanded to the Circuit Court, a second trial was had on an amended declaration, which resulted in a verdict and judgment in favor of appellee for $3,500, and the case comes here on the appeal of the railroad company.

KRAMER, KREIGHTON & SCHAEFFER, attorneys for appellant; JOHN G. DRENNAN, of counsel.

WEBB & WEBB, and DILL & WILDERMAN, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

No question is raised by appellant in regard to the ruling of the court in admitting or excluding evidence, nor in

refusing instructions offered on behalf of appellant, but it is mildly suggested that the court erred in giving appellee's three instructions.

To the first two instructions, it is suggested that " they are given upon the theory that this case comes within the exceptions to the general rule of assumed risk, as though there had been some promise to repair, or where the employe had called the master's attention to some dangerous appliance or unsafe method of doing the work.

An examination of the instructions discloses that they were not given upon the theory supposed, but upon the theory and strictly along the line set forth in plaintiff's declaration, on which defendant took issue. No error was committed in giving them.

The third instruction relates only to the measure of damages, and no reason is urged why it should not have been given.

The principal reason urged for a reversal of the judgment goes back to the refusal of the court to take the case from the jury, and the question now is, is there any substantial evidence in the record, that warrants the verdict found by the jury?

The theory on which appellee prosecutes the case is, that when foreman Gamble ordered Trinkle to strike the heel of the claw-bar with the iron maul, the railroad company gave the command to do a negligent act, which was the proximate cause of a serious injury to appellee.

The theory on which appellant defends the case is, not that the foreman of appellant did not give the order or command to Trinkle to strike the claw-bar with the maul, but that the act in so striking was necessary to remove the spike from the tie in which it had been driven, and was one of the usual methods adopted and used by railroads for pulling spikes from hard railroad ties, which fact was known to appellee, or might have been to a man of ordinary intelligence, placed in the position in which appellee was, for more than two years next prior to the time he was injured.

It is not contended by counsel for appellee that Trinkle and appellee were not fellow-servants of a common master, or that, if no order or command had been given by Gamble to draw the spike in the manner that it was attempted to be drawn, and Trinkle of his own motion had struck the claw-bar as he did, and by so doing injured appellee, that appellant would have been liable for the injury.

This brings us to the question, was the order of Gamble unreasonable, and unnecessary, considering the circumstances surrounding him at the time it was given? A collision of two trains had occurred, the track of the railroad was torn up for some distance, a channel of commerce and travel was blocked, and it was important it should be opened up as speedily as possible; but on the other hand, so far as the evidence discloses, no person was suffering from injury caused by the collision, and the order which was given was not made in a laudable endeavor to save human life. Under such circumstances we can not say, as a matter of law, that he did right or wrong; but whichever it was, was a matter for the jury to determine, and they must have found that the order was wrongfully given, and that it was the proximate cause of the injury.

Counsel for appellant in their able argument which they have provided us with, strongly contend that the method of drawing the spike was common to railroads generally, and that appellee, when he hired to appellant as a section hand, took upon himself the hazards attendant in striking the heel of the claw-bar with the iron maul, to cause the claw to take hold of the neck of the spike.

If the first part of the contention was undisputed, the latter part would have to be conceded. As to whether the use of the maul in drawing spikes, as was done in this case, was common to railroads generally, and whether it could be called "good railroading," was a disputed question of fact. Many witnesses were called and testified on this subject, and the result was a disagreement about the matter; but there seems to have been a nearly unanimous agreement that the safe and proper way to pull spikes imbedded in hard, solid, railroad ties, is first to remove the wood

around the spike with an adz, so that the claw of the bar would take hold of the neck of the spike, without using the maul.   This being so, is some evidence that the method of removing the spike from the tie, as was attempted in' this case, can not be regarded as a safe way of doing such work; for, certainly, the use of the iron maul on the foot of a claw-bar would be a speedier method of removing the spike than by first using the adz in cutting away a portion of the timber around it.

It is further contended by counsel that appellee was in fault in not using an adz which was near at hand, and appellee knew it.

The answer to this contention is, that the railroad company, through Gamble, ordered the spike to be drawn in the manner as before stated, and as the danger in so drawing it was not imminent, but latent, it was the duty of Trinkler and appellee to obey the order.   If, then, the order was made by Gamble, as claimed by appellee, and the result arising from carrying out the order was such as might have been reasonably expected, appellant should be held liable.

There is nothing in the case but questions of fact.   The evidence in regard to the controlling questions is conflicting.   The jury were better judges of the credibility and reasonableness of the testimony of the witnesses, than we are; and while we regard the case as situated near the border line of liability on one side, and assumed risk on the other side, after the verdict of the two juries the same way, we do not feel justified in saying that the plaintiff has no case; therefore the judgment is affirmed.